## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2016, 5:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Ellen F. Hurley
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

M.B.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

June 15, 2016

Court of Appeals Case No.
49A02-1509-JV-1527

Appeal from the
Marion Superior Court

The Honorable
Marilyn A. Moores, Judge
The Honorable
Scott B. Stowers, Magistrate

Trial Court Cause No.
49D09-1507-JD-1186

**Kirsch, Judge.**

M.B. appeals his adjudication as a delinquent child for committing burglary, which would be a Level 4 felony[1] if committed by an adult. M.B. raises the following restated issue on appeal: Whether the evidence of intent to commit theft was sufficient to support M.B.'s burglary adjudication.[2]

We affirm.

## Facts and Procedural History

On July 1, 2015, at approximately 5:15 p.m., Indianapolis Metropolitan Police Department Officers Noe Reyes ("Officer Reyes") and Keith Shelton ("Officer Shelton") were dispatched to an apartment complex on Hawkesbury Lane in Indianapolis, Indiana, on the report of a burglary at an apartment. Christine Carter ("Carter"), who is M.B.'s aunt, lived in the apartment, although she was not home at the time; some neighbors called Carter to advise her about the break-in. After Carter had returned to the scene, she reported that her PlayStation 4 video gaming system, along with three games and a controller, were taken, as well as money from her bedroom.

After receiving the dispatch call, Officer Shelton arrived at the apartment complex, where he received a description of a young male who was seen fleeing the complex. The individual, later identified as M.B., was described as being a

---

[1] *See* Ind. Code § 35-43-2-1.

[2] The juvenile court also entered a true finding for an act that would have been Class A misdemeanor resisting law enforcement if committed by an adult. Ind. Code § 35-44.1-3-1(a)(3). M.B. does not challenge that adjudication on appeal.

black male with a backpack, wearing a white t-shirt and riding an orange moped. Officer Shelton radioed this information to Officer Reyes and then proceeded to Carter's apartment to investigate. Officer Shelton noticed that the apartment's front door appeared to have been forced open, as the frame was broken, and there was wood on the ground. Officer Shelton also observed that there was a television set knocked over on the floor, with numerous wires disconnected from it.

[5] When Officer Reyes arrived at the complex, he observed an individual matching M.B.'s description leaving the area on an orange moped, riding westbound on the sidewalk area. Officer Reyes immediately pulled to the side in his fully-marked police vehicle, rolled his window down, and ordered M.B. to stop, but M.B. fled on the moped. Officer Reyes activated his emergency lights and pursued M.B., who eventually lost control of his moped on gravel, fell off, and fled on foot. Officer Reyes observed M.B. drop his backpack as he ran. Officer Reyes lost sight of M.B., but returned to the location of the moped and recovered a hammer and a screwdriver that had fallen out of the moped. Officer Reyes also retrieved the backpack, which contained a PlayStation 4 video gaming system ("the PlayStation"), a PlayStation remote game controller, and two video games.[3]

---

[3] We note that there was no evidence that any money was found in M.B.'s possession when he was apprehended.

[6] Meanwhile, another officer assisting in the search located M.B. and apprehended him. Officer Reyes then arrived and transported M.B. back to the apartment complex to speak with a detective. During the ride, M.B. told Officer Reyes, "You guys can't charge me with anything. That's my aunt's house." *Tr.* at 26, 28. M.B. also commented to Officer Reyes that "there's no way" that he "could be charged with stealing something that belonged to himself." *Id.* at 28. M.B. mentioned that he was mad that his aunt had "put him in a foster home," and he "was just there to get his stuff." *Id.*

[7] The following day, on July 2, 2015, the State filed a delinquency petition alleging that M.B. committed acts that would be, if committed by an adult, Count I, burglary, a Level 4 felony; Count II, theft, a Class A misdemeanor; and Count III, resisting law enforcement, a Class A misdemeanor. On July 30, 2015, the juvenile court conducted a fact-finding hearing.

[8] At the hearing, Carter testified that M.B. had lived with her at the apartment when M.B.'s mother was in jail. After about six weeks of living with Carter, M.B. left her care and was placed in foster care, where M.B. was residing at the time of the fact-finding hearing. Carter testified that M.B. did not have her permission to enter her apartment or to take the PlayStation, games, or controller. Carter testified to having purchased the PlayStation, initially characterizing it as belonging to her, but she later testified that it belonged to her boyfriend, for whom she had purchased the PlayStation and games as a gift. With regard to the television, which was disconnected but not taken, Carter stated that it was owned by M.B.'s mother. Carter also noted that, because

M.B. had lived with her for a while, he had some personal belongings at her apartment, including a bag of clothes and a boot worn on his leg during an injury, but he did not take those belongings on the date in question.

[9] M.B. testified at the fact-finding hearing in his own defense, stating that the PlayStation and games were his own, as his mother had purchased those items for him as a Christmas gift. M.B. explained that, on the day in question, he tried to call his aunt to ask her if he could return to the apartment and retrieve his belongings, but his calls went straight to her voicemail. He tried to send text messages to her, but he received no response. M.B. then decided to go to the apartment anyway. He knocked on the door, and after receiving no answer, he knocked on her downstairs neighbor's door, thinking perhaps his aunt was in there. After receiving no response there, M.B. forced his way into Carter's apartment, planning to "grab my property and go." *Tr.* at 41. M.B. testified that when he got into the apartment,

> A: I seen my TV. I seen my game. I seen my fan and I didn't proceed to look around. I didn't look around. I just seen my stuff and I grabbed my stuff.
>
> Q: OK. Did you take any money?
>
> A: No. There was no money in there.
>
> Q: OK. Did you take anything else that you thought didn't belong to you?
>
> A: No. There was nothing else.

*Id.* M.B. agreed that he had a bag of clothing in the apartment, but did not take it. He explained that he would have taken his mother's television set with him, but it was too big to carry on the moped. When a neighbor told M.B. that she was calling his aunt, he decided to wait for her. However, when he noticed a police car approaching the apartment complex, he realized that the neighbor had called the police, at which time he became scared and fled on his moped.

[10] On cross-examination, M.B. acknowledged that he was "upset" with Carter because she had placed him in foster care. *Id.* at 43. The State's cross-examination also asked M.B. to acknowledge that he had owned a different PlayStation gaming system, which he had sold for cash, but M.B. denied that he sold it and maintained that the one he took from Carter's house was his. Thereafter, the State called Carter as a rebuttal witness, and she testified that M.B. had owned a PlayStation but that he sold it, along with some shoes, and M.B. had shown her the cash he received for the sale of the items. M.B. returned to the witness stand and testified that he sold shoes, not his PlayStation.

[11] At the conclusion of the hearing, the juvenile court entered true findings on Counts I and III and adjudicated M.B. to be a delinquent child. The juvenile court did not enter a true finding on Count II, noting that there was "a bit of an issue with respect to ownership of the property in question." *Id.* at 58. On September 4, 2015, the juvenile court held a dispositional hearing and placed M.B. on probation with a suspended commitment to the Department of Correction. M.B. now appeals.

# Discussion and Decision

[12] M.B. argues that insufficient evidence was presented at the fact-finding hearing to support the adjudication as a delinquent for committing an act that would be burglary, a Level 4 felony if committed by an adult. When this court reviews sufficiency of the evidence claims with respect to juvenile adjudications, we neither reweigh the evidence nor judge the credibility of the witnesses. *M.S. v. State*, 889 N.E.2d 900, 901 (Ind. Ct. App. 2008), *trans. denied*. Instead, we will examine the evidence most favorable to the judgment and the reasonable inferences that may be drawn therefrom. *Id*. We will affirm if there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt. *Id.*

[13] Indiana Code section 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with the intent to commit a felony or theft in it, commits burglary."[4] Given that burglars "rarely announce their intentions at the moment of entry," a burglar's intent to commit a specific felony at the time of breaking and entering may be inferred from the circumstances, and circumstantial evidence alone is sufficient to sustain a burglary conviction. *Baker v. State*, 968 N.E.2d 227, 230 (Ind. 2012). While evidence of intent "need not be insurmountable," there must be "a specific fact that provides a solid basis to support a reasonable inference that the defendant

---

[4] Burglary is a Level 4 felony if the building or structure is a "dwelling," which includes "a person's home or place of lodging." Ind. Code §§ 35-43-2-1; 35-31.5-2-107.

had the specific intent to commit a felony."[5] *Id.* at 229-30 (internal citations and quotation marks omitted). Furthermore, the evidentiary inference pointing to the defendant's intent must be separate from the inference of the defendant's breaking and entering. *Id*. at 230. "In other words, the evidence must independently support each inference – felonious intent and breaking and entering – and neither inference should rely on the other for support." *Id*. "This is not to say, however, that the same piece of evidence cannot support both inferences." *Id*.

[14] Here, the State charged M.B. with breaking and entering Carter's home with the intent to commit a felony therein, namely, theft, which is the knowing or intentional exertion of "unauthorized control over property of another person, with intent to deprive the person of any part of its value or use." Ind. Code § 35-43-4-2. M.B. effectively concedes that he broke and entered Carter's dwelling, but he maintains that he did so to take property that belonged to him. He argues that the PlayStation items that he took were his own, and, therefore, he did not have the requisite intent to commit theft, as was necessary for the burglary adjudication. M.B.'s position ignores the fact that conflicting evidence was presented at the fact-finding hearing on the issue of ownership of the PlayStation items. While M.B. testified that he owned it, Carter testified that she owned it or that her boyfriend did, as she had purchased it for him but he

---

[5] Requiring independent evidence of intent is necessary to maintain the distinction between burglary and other criminal offenses involving property invasion such as criminal trespass, Indiana Code section 35-43-2-2, or residential entry, Indiana Code section 35-43-2-1.5.

left it at her apartment. Carter also testified that M.B. previously had owned his own PlayStation, but that he sold it and thereafter showed her the cash that he had received for it. M.B.'s argument, claiming that he lacked the intent to commit theft because he – not his aunt – owned the PlayStation, is a request for us to assess the witnesses' credibility and reweigh the evidence, which we cannot do. As our Supreme Court observed,

> These evaluations are for the trier of fact, not appellate courts. In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented.

*Baker*, 968 N.E.2d at 229. In addition to Carter's testimony regarding her ownership of the gaming equipment, we note that M.B. fled when police arrived and dropped his backpack that held the PlayStation, controller, and games; from this, a fact-finder could reasonably infer that M.B. was attempting to dispose of the items taken because they did not belong to him. We conclude that sufficient evidence existed from which the trier of fact could infer that M.B. did not own the PlayStation, games, and controller in question and that he broke into Carter's home with the intent to take those items.

[15] To the extent that M.B. argues that because the juvenile court did not enter a true finding on the charge of theft, it was thereby precluded from entering a true finding on the charge of burglary, we disagree. We recognize that the juvenile court, when announcing its decision with regard to theft charge, noted that there was "a bit of an issue with respect to ownership of the property in

question." *Tr.* at 58. However, one commits burglary when he "breaks and enters the building or structure of another person, with intent to commit a felony in it," and one commits theft when he "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." Ind. Code §§ 35-43-2-1, 35-43-4-2. Burglary and theft contain distinct elements, and, to obtain a conviction for burglary, it is not necessary for the State to prove that the defendant committed theft or any other felony, as the burglary is complete upon breaking and entering *with intent to* commit a felony.

[16] Here, even if we do not consider the PlayStation and related accessories, the record contains other evidence from which the juvenile court could have inferred that M.B. entered Carter's home with the intent to commit theft therein. M.B. was mad about being in the foster care system, and he was "upset" with Carter about it. *Tr.* at 43. While maintaining that he broke into her home to take only what was his, he did not take the bag of personal clothes and belongings that all parties agree belonged to him. When asked what he did once he had gained access to Carter's apartment, M.B. testified that he saw the television, PlayStation, and his fan, and he offered – although not asked – "[A]nd I didn't proceed to look around. I didn't look around." *Id.* at 41. While he denied taking any money, his response included the comment, "There was no money in there[,]" which he would not have known if he had not looked for money. *Id.* It was for the juvenile court to assess M.B.'s credibility, which in turn affected any inferences the juvenile court may have drawn from

the evidence, including what M.B.'s intentions were when he broke into his aunt's home. Our standard of review requires that we will "consider[] only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence." *Baker*, 968 N.E.2d at 229. Under that standard, we find that the State presented sufficient evidence, direct and circumstantial, to support the juvenile court's true finding that M.B. committed burglary, a Level 4 felony if committed by an adult.

[17] Affirmed.

Pyle, J., concurs.

Riley, J., dissents with separate opinion.

| M.B., | Court of Appeals Case No. |
|---|---|
| *Appellant-Respondent,* | 49A02-1509-JV-1527 |
| v. | |
| State of Indiana, | |
| *Appellee-Petitioner.* | |

**Riley, Judge dissenting**

[18] I respectfully dissent from the majority's decision to affirm M.B.'s adjudication as a delinquent child for committing an act that would be burglary, a Level 4 felony, if committed by an adult. Because I conclude that the State did not establish beyond a reasonable doubt that M.B. committed a burglary, I would reverse M.B.'s conviction.

[19] The State charged that M.B. did "knowingly or intentionally break and enter the dwelling [] with the intent to commit [] theft." (Appellant's App. p. 17). As

noted by the majority, "M.B. effectively concedes that he broke and entered Carter's dwelling, but he maintains that he did so to take property that belonged to him." (Slip op. p. 8). At the fact-finding hearing, conflicting evidence was presented on the ownership of this property. On the one hand, Carter gave contradicting testimony, initially claiming ownership over the PlayStation and the games, while later admitting that her boyfriend owned the electronics. Whereas, on the other hand, M.B. testified that the property found in his backpack was his. Recognizing this conflicting evidence, the juvenile court refused to enter a true finding on the theft charge, concluding that there was "a bit of an issue with respect to ownership of the property in question." (Tr. p. 58). The State did not appeal this finding.

[20] As the juvenile court acknowledged the ownership issue of the PlayStation, and in light of the undisputed facts that M.B. and his Mother had several of their belongings in Carter's apartment, it is difficult to understand how the State could establish the intent element, *i.e.*, intending to commit a theft, beyond a reasonable doubt. Even though the majority appears to acknowledge this difficulty, it attempts to explain this by pointing to other evidence from which the juvenile court could have inferred intent. Specifically, the majority speculates that while M.B. denied taking any money because there was no money, he could "not have known if he had not looked for money." (Slip op. p. 10). Nevertheless, the record is clear that M.B. only entered the dwelling, planning to "grab my property and go." (Tr. p. 41). The record does not support an inference that M.B. intentionally entered the dwelling to take items

that did not belong to him. *See* I.C. § 35-43-2-1. Accordingly, as the State cannot establish the requisite intent for the charge, I would reverse M.B.'s adjudication.